UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anthony Alviar,

    Plaintiff,                             Case No.
                                          Hon.

v

Gerber Products Company d/b/a
Nestle Infant Nutrition,

    Defendant.

---

Pitt McGehee Palmer Bonanni & Rivers, P.C.
Channing Robinson-Holmes (P81698)
Robert W. Palmer (P31704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
crobinson@pittlawpc.com
rpalmer@pittlawpc.com

---

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff Anthony Alviar brings this action for wrongful discharge and civil rights violations against Defendant Gerber Products Company d/b/a Nestle Infant Nutrition under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601 *et seq,* and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.     This employment case is based on unlawful interference and retaliation pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601 *et seq.*

2.     The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of the FMLA.

3.     The venue of this Court over this controversy is proper because the events giving

rise to the action occurred in this district and all parties reside in or operate within this district.

4. Defendant Gerber Products Company d/b/a Nestle Infant Nutrition ("Gerber" or "Defendant") is a Michigan corporation located in Newaygo County, Michigan that transacts business and performs services in the State of Michigan.

5. Plaintiff Anthony Alviar ("Alviar" or "Plaintiff") is a former employee of Gerber and current resident of Van Buren County, Michigan.

## STATEMENT OF FACTS

6. On December 7, 2021, Defendant Gerber Products Company hired Anthony Alviar to the position of Manual Assembly at its plant location in Fremont, Michigan.

7. Alviar went on to hold several different positions during his employment with Gerber, including:

   a) Freeze Dry Operator JTM D-Crew, February 17, 2022 – September 5, 2022
   b) Freeze Dry Operator MELTS Alt Work Week C-Crew, September 5, 2022 – October 29, 2024
   c) Aseptic Packaging Legacy C-Crew, October 29, 2024 – April 4, 2025

8. In his position with Aseptic Packaging Legacy C-Crew, Alviar worked seven 12-hour shifts in a two-week period, in addition to variable overtime.

9. During the course of his employment with Gerber, Alviar did not receive any written disciplinary actions based on his job performance or behavior.

10. In fact, Alviar excelled in his positions and received positive performance evaluations praising his skills and observed desire to succeed, with comments like the following:

   a) "Demonstrates an increased technical ability and understanding of skills needed to do the job well and seeks ways to learn new skills"

   b) Works effectively on his own and displays a cooperative and team work attitude to TLs and other team members"

   c) "Demonstrates ability to work quickly and accurately"

    d) "Follows all procedures and shop rules, including safety on the job"

11. Alviar valued his job and the Gerber Company and intended to devote his working life to the Gerber Company.

### October – December 2024: Alviar Repeatedly Sought FMLA

12. Between October and December of 2024, Alviar submitted at least six requests for intermittent leave under the Family and Medical Leave Act.

13. For each request, Alviar articulated that he needed intermittent leave in order to care for his family members and their serious medical conditions.

14. Alviar was anxious to care for his family but reluctant to jeopardize his job security by taking unapproved time off, telling Gerber:

> "My son Damon Alviar has Autism and a speech impairment. My son Marshall has ADHD and is currently being evaluated through his school for Autism as well My wife needs assistance with ADLs and I have her paperwork as well. It will not allow me to submit a new claim and I am desperately needing to start using my FMLA as my family members need assistance."

15. Yet, Gerber repeatedly denied Alviar's requests for intermittent leave under the FMLA based on eligibility, namely that he had not worked the requisite 1250 hours in the preceding 12-month period.

    **a. Request for Leave, Case No. 4A2410G35SK0001GI**

16. Alviar's request for intermittent leave under the FMLA to care for his son, Marshall, Case No. 4A2410G35SK0001GI, requested to begin on October 29, 2024, was denied because he had purportedly only worked 1160 hours of the 1250 hours needed in the preceding 12-month period.

17. However, Gerber recorded Alviar working more than 1160 hours earlier that month.

18. As of October 16, 2024, Alviar was reported to have worked 1171 hours of the 1250 hours needed in the preceding 12-month period.

### 1. Request for Leave, Case No. 4A24113PWQ90001GI

19. Alviar's request for intermittent leave under the FMLA to care for his son, Damon, Case No. 4A24113PWQ90001GI, requested to begin on November 5, 2024, was denied because he had only worked 1146.96 hours of the 1250 hours needed in the preceding 12-month period.

20. However, Gerber recorded Alviar working more than 1146.96 hours the preceding month.

21. As of October 16, 2024, Alviar was reported to have worked 1171 hours of the 1250 hours needed in the preceding 12-month period.

### 2. Request for Leave, Case No. 4A24113PXTV0001GI

22. Alviar's request for intermittent leave under the FMLA to care for his son, Marshall, Case No. 4A24113PXTV0001GI, requested to begin on November 11, 2024, was denied because he had only worked 1146.96 hours of the 1250 hours needed in the preceding 12-month period.

23. However, Gerber recorded Alviar working more than 1146.96 hours the preceding month.

24. As of October 16, 2024, Alviar was reported to have worked 1171 hours of the 1250 hours needed in the preceding 12-month period.

25. Moreover, Gerber reported that Alviar had worked the same number of hours – 1146.96 hours – in response to requests for leave he made on both November 5th and November 11th, which was demonstrably untrue as Alviar had worked 122.02 hours between November 3, 2024 and November 16, 2024.

### 3. Request for Leave, Case No. 4A24113PYH40001GI

26. Alviar's request for intermittent leave under the FMLA to care for his wife, Marcella, Case No. 4A24113PYH40001GI, requested to begin on November 15, 2024, was denied because he had not worked the 1250 hours needed in the preceding 12-month period.

27. However, as of November 25, 2024, Gerber recorded Alviar working 1244 hours in the preceding 12-month period – just six hours less than the requisite 1250 hours.

28. Despite being only six hours away from eligibility, Gerber did not inform Alviar of his looming eligibility nor did Gerber identify Alviar's request for intermittent leave as "pending" contingent upon his completing six more work hours.

### 4. Request for Leave, Case No. 4A2410G35SK0001GI

29. Alviar's request for intermittent leave under the FMLA to care for his wife, Marcella, Case No. 4A2410G35SK0001GI, requested to begin on December 3, 2024, was denied because he had only worked 1238 hours of the 1250 hours needed in the preceding 12-month period.

30. However, Gerber recorded Alviar working more than 1238 hours the preceding month.

31. As of November 25, 2024, Alviar was reported to have worked 1244 hours of the 1250 hours needed in the preceding 12-month period.

### f. Request for Leave, Case No. 4A24123L2ML0001GI

32. In November of December of 2024, Alviar made his last request for intermittent leave under the FMLA to care for his wife, Marcella, Case No. 4A24123L2ML0001GI, requested to begin on December 10, 2024.

33. As of December 10, 2024, Alviar was reported to have worked 1248 hours of the

5

1250 hours needed in the preceding 12-month period.

34. Yet, two days later, on December 12, 2024, Gerber reported that Alviar had worked 1281.03 hours, surpassing the requisite 1250 hours by 31 hours.

35. Despite Alviar's eligibility, Gerber denied Alviar's request for intermittent leave on January 6, 2025.

36. Ten days later, on January 16, 2025, Gerber approved Alviar's request for intermittent leave and backdated it to begin on December 12, 2024.

### January – April 2025: Alviar was Finally Approved for Intermittent FMLA Leave and Simultaneously Penalized for Utilizing It

37. After finally being approved for intermittent leave under the FMLA, Alviar began utilizing his approved leave.

38. On February 8, 2025, Alviar utilized his approved FMLA leave.

39. Gerber approved Alviar's February 8th absence from work, pursuant to his intermittent leave under the FMLA.

40. On February 17, 2025, Supervisor Bethany May issued Alviar a disciplinary written warning, pursuant to the attendance policy – the first step in Gerber's progressive disciplinary policy – which identified his FMLA-approved absence of February 8, 2025 amongst the "list of absences leading up to this notice."

41. At the end of March of 2025, Alviar's wife was in health crisis amid a high-risk pregnancy.

42. On March 27, 2025, Alviar again utilized his approved FMLA leave.

43. Gerber approved Alviar's March 27th absence from work, pursuant to his intermittent leave under the FMLA.

44. On March 31, 2025, Alviar again utilized his approved FMLA leave.

45. Gerber approved Alviar's March 31st absence from work, pursuant to his intermittent leave under the FMLA.

46. On April 1, 2025, Alviar again utilized his approved FMLA leave.

47. Gerber approved Alviar's April 1st absence from work, pursuant to his intermittent leave under the FMLA.

48. Alviar was not scheduled to work on April 2, 2025 or April 3, 2025.

49. The next day, on April 2, 2025, Alviar was identified as reaching "termination level" pursuant to the attendance policy, which identified his FMLA-approved absences of February 8, 2025 and March 27, 2025 amongst the "list of absences leading up to this notice" and Gerber consequently terminated Alviar's employment on April 4, 2025:

> Subj: Termination
>
> As of 4/02/2025 you have reached a **termination** level. According to the attendance policy you are receiving this termination notice effective today. A list of absences leading up to this notice is included below for your convenience.
>
> | Date | Description | Points | Category |
> |---|---|---|---|
> | 1/21/2025 | 2250 NP Absence | -1.00 | Attendance Points Max 5 |
> | 2/08/2025 | 2250 NP Absence | -1.00 | Attendance Points Max 5 |
> | 2/17/2025 | 2250 NP Absence, Report Off Late | -1.50 | Attendance Points Max 5 |
> | 3/27/2025 | Late In @ 0001-0100 | -0.50 | Attendance Points Max 5 |
> | 4/02/2025 | 2250 NP Absence, No Call No Show | -1.50 | Attendance Points Max 5 |
> | 4/03/2025 | 2250 NP Absence, No Call No Show | -1.50 | Attendance Points Max 5 |
>
> Attendance Balance:  Attendance Points Max 5   -2.00

7

50. As of April 2, 2025, Alviar was over the "Attendance Points Max" of "5" with a total of 5.5 points, which included 1.5 points from Alviar's FMLA-approved absences on February 8, 2025 and March 27, 2025.

51. Had Gerber not included Alviar's FMLA-approved absences on February 8, 2025 and March 27, 2025 in its "Attendance Points" calculation, Alviar would not have been at the "Attendance Points Max" on April 2, 2025.

52. In its haste to terminate Alviar, Gerber skipped the second step of its progressive discipline policy – "Final Written Warning, counseling with Supervisor, Area Manager & Human Resources" – and, instead, promptly terminated Alviar.

53. During his termination meeting on April 4, 2025, Alviar explained to those present – Supervisor Bethany May, Senior Human Resources Generalist Sheila Bradshaw, and Chief Union Steward Nick Boltz – that his wife was presently experiencing a medical emergency and that he had utilized FMLA-approved leave for the absences cited for his termination.

54. Despite Alviar's verbal explanation and his use of FMLA-approved leave, Gerber proceeded with Alviar's termination.

55. Following Alviar's termination, Gerber protested Alviar's determination for unemployment benefits to Michigan's Unemployment Insurance Agency alleging "Misconduct," pursuant to Michigan Employment Security Act (MES) Act, because Gerber fired Alviar "for excessive attendance violations" which included Alviar's absences pursuant to approved FMLA-leave.

56. Based on the information Gerber provided to Michigan's Unemployment Insurance Agency, the Agency denied Alviar's application for unemployment benefits for which he was entitled.

## COUNT I
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")

57. Plaintiff incorporates by reference all the allegations contained above as though stated in full herein.

58. At all times relevant hereto, Alviar was an employee and Defendant an employer within the meaning of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601, *et seq.*

59. Plaintiff fell within the protection of the FMLA as a person caring for a family member with a serious health condition. 29 U.S.C. §2612(a)(1)(C).

60. At all times relevant hereto, Plaintiff's spouse and sons suffered from serious health conditions in that they had physical conditions that required continuing treatment from a healthcare provider.

**A. Interference with FMLA Leave**

61. Under the FMLA, Defendant had an obligation to inform Plaintiff of his rights under the FMLA.

62. Under the FMLA, Defendant had an obligation to provide Plaintiff with up to 12 weeks of continuous or intermittent leave in order to care for a family member with a serious health condition.

63. Notwithstanding Defendant's duties as set forth above, Defendant willfully violated the FMLA by interfering with Plaintiff's attempts to exercise his rights under the Act, namely by denying Plaintiff's leave requests despite his eligibility.

64. Alviar was eligible for leave under the FMLA prior to December 12, 2024 as, by that point, Gerber reported that he had worked 1281.03 hours, surpassing the requisite 1250 hours by 31 hours.

65. Despite his eligibility, and his professed desperation to begin utilizing FMLA leave to care for his family, Defendant denied Alviar FMLA leave until January 16, 2025.

**B. Retaliation for Exercising Rights Under the FMLA**

66. In addition, Defendant is prohibited under the FMLA from retaliating against Plaintiff for requesting and/or taking FMLA leave.

67. Notwithstanding Defendant's duties as set forth above, Defendant willfully violated the FMLA by disciplining Plaintiff and terminating Plaintiff's employment because he exercised his rights under the FMLA by requesting and/or taking leave under the Act.

68. Defendant further willfully violated the FMLA by protesting Alviar's application for unemployment benefits because he exercised his rights under the FMLA by requesting and/or taking leave under the Act.

69. Defendant's willfulness is demonstrated by Alviar's written disciplinary action of February 17, 2025 penalizing him for utilizing approved FMLA-leave on February 8, 2025.

70. Defendant's willfulness is further demonstrated by its decision to terminate Alviar because of his approved FMLA absences of February 8, 2025 and March 17, 2025.

71. Defendant's willfulness is further demonstrated by its decision to protest Alviar's application for unemployment benefits based on his absences from work pursuant to his approved FMLA leave.

72. As a direct and proximate result of Defendant's violations of the FMLA, Plaintiff has and will continue to be deprived of wage loss, fringe benefits, status, seniority, and other advantages of employment; Plaintiff has, and in the future, will experience mental anguish, humiliation, and embarrassment, resulting from Defendant's violations of the FMLA.

Accordingly, Plaintiff requests the following relief:

  a. An order reinstating Plaintiff to his former position or a comparable position;

  b. An Order of this Court awarding Plaintiff liquidated damages in accordance with the FMLA;

  c. An Order of this Court awarding Plaintiff compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

  d. An Order of this Court awarding Plaintiff interest, costs, and attorney fees;

  e. An Order of this Court awarding Plaintiff such other equitable relief as this Court deems just and equitable.

       Respectfully submitted,

       Pitt McGehee Palmer Bonanni & Rivers, P.C.

     By: s/Channing Robinson-Holmes
      Channing Robinson-Holmes (P81698)
      Robert W. Palmer (P31704)
      Attorneys for Plaintiff
      117 W. Fourth Street, Suite 200
      Royal Oak, Michigan 48067
      (248) 398-9800
      crobinson@pittlawpc.com
      rpalmer@pittlawpc.com

Dated:  November 12, 2025

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Anthony Alviar,

    Plaintiff,

v

Gerber Products Company d/b/a
Nestle Infant Nutrition,

    Defendant.

Case No.
Hon.

---

Pitt McGehee Palmer Bonanni & Rivers, P.C.
Channing Robinson-Holmes (P81698)
Robert W. Palmer (P31704)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, Michigan 48067
(248) 398-9800
crobinson@pittlawpc.com
rpalmer@pittlawpc.com

---

## **DEMAND FOR JURY TRIAL**

Plaintiff, Anthony Alviar, by his attorneys, PITT, MCGEHEE, PALMER BONANNI & RIVERS, hereby makes a formal demand for a trial by jury of the facts and issues involved in this matter.

    Respectfully submitted,

    Pitt McGehee Palmer Bonanni & Rivers, P.C.

    By:   s/Channing Robinson-Holmes
        Channing Robinson-Holmes (P81698)
        Robert W. Palmer (P31704)
        Attorneys for Plaintiff
        117 W. Fourth Street, Suite 200
        Royal Oak, Michigan 48067
        (248) 398-9800
        crobinson@pittlawpc.com
        rpalmer@pittlawpc.com

Dated: November 12, 2025